# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

HALONNAH HOPE SUTTON,

        Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

Case No. 1:16-cv-01580-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

On October 19, 2016, Plaintiff Halonnah Hope Sutton ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) benefits. (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Sheila K. Oberto, United States Magistrate Judge.[2]

## II.    FACTUAL BACKGROUND

On January 29, 2013, Plaintiff protectively filed an application for SSI payments, alleging she became disabled on December 12, 2011, due to scoliosis and osteoarthritis in her neck. (Administrative Record ("AR") 42, 90, 100, 184, 185.) Plaintiff was born on September 22, 1980, and was 32 years old on the date the application was filed. (AR 45, 55, 90, 100.) She graduated from high school and completed four years of college. (AR 45, 58.) From July 2010 to December 2011, Plaintiff worked at Subway making sandwiches. (AR 44, 60–61, 208–09, 244.) Prior to that, Plaintiff worked at a music equipment store. (AR 60–61, 208, 210, 244.)

### A.    Relevant Medical Evidence[3]

#### 1.    Family Healthcare Network

In May 2009, Plaintiff was evaluated for neck pain and headaches. (AR 304–05, 323–24.) Plaintiff stated she had "some scoliosis diagnosed in childhood or at least spinal curvature." (AR 304.) She reported a history of neck and head pain in the past and stated that "when she stretches and twists the neck, it tends to feel good as it pops." (AR 304, 323.) Plaintiff did yoga, which tended to "feel beneficial." (AR 304, 323.) On examination by John Reifenberg, N.D./D.C., Plaintiff's range of motion in her back and neck were normal, with mild discomfort in her neck. (AR 304, 323.) Dr. Reifenberg observed a "slight to mild curvature" especially at the thoracic spine, and a slight curvature at the cervical and lumbar spine areas. (AR 304, 323.) Dr. Reifenberg found no mass, crepitus, instability, or deformity palpable throughout the spine. (AR 304, 323.) He concluded that Plaintiff had a history of recurrent neck and pain and "[p]robable tension headache with some aggravation of pain more recently." (AR 305, 324.) Dr. Reifenberg recommended mild stretching, and ice and heat as needed. (AR 305, 324.)

On August 20, 2012, Plaintiff presented for a follow up appointment related to her scoliosis, with which she was diagnosed as a child but never had an evaluation. (AR 318, 325–27.) She reported having "mild pain" in her upper back, "especially after long days of work."

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 8.)
[3] As Plaintiff's assertion of error is limited to the ALJ's consideration of Plaintiff's subjective complains of pain, only evidence relevant to these arguments is set forth below.

(AR 318, 325.) Kari Vanocker, P.A., observed a mild thoracic curvature to the left, and assessed Plaintiff with scoliosis. (AR 326.) Dr. Vanocker ordered x-rays and advised Plaintiff to exercise and to apply ice and heat for pain. (AR 327.)

Plaintiff had an x-ray of her spine on September 14, 2012, which showed lower thoracic levoscoliosis of 11 degrees and compensatory lumbar dextroscoliosis at 10 degrees. (AR 312–17, 438.) At her follow up appointment on October 13, 2012, Plaintiff continued to complain of chronic thoracic and lower back pain, with intermittent muscle tightness, spasms, and pain. (AR 306, 328.) She reported controlling her pain with home exercise and over-the-counter medications. (AR 306–07, 328–29.) Marilyn Perez, P.A-C., recommended a "trial of physical therapy." (AR 307, 329.) Plaintiff was prescribed ibuprofen for back pain on October 16, 2012. (AR 330–32.)

A December 14, 2012, x-ray of Plaintiff's cervical spine showed disc disease at the C5–C6 and C6–C7 levels. (AR 336.) A subsequent x-ray of Plaintiff's cervical spine performed on April 17, 2013, showed degenerative disc disease at C5–C6, with mild to moderate bilateral neural foraminal stenosis that is greater on the left side. (AR 386.)

In September 2013, Plaintiff complained that ibuprofen was not helping and she "want[ed] something stronger." (AR 409.) She was prescribed Meloxicam and Tramadol. (AR 410.) On June 24, 2014, Plaintiff presented for a follow-up appointment related to scoliosis, osteoarthritis, and chronic pain syndrome. (AR 458.) She indicated that she "hasn't worked since 2011, but wants to apply for disability." (AR 458.) On examination, Plaintiff had full range of motion in her back with no tenderness. (AR 458.) Plaintiff's prescriptions for Meloxicam and Tramadol were refilled. (AR 458.) She reported in October 2014 that the pain medication "worked well." (AR 452.) Plaintiff's bone densitometry test performed December 3, 2014, was normal.

### 2. Sierra View District–Outpatient Physical Therapy Services

Plaintiff attended three physical therapy sessions on April 17, 18, and 23, 2013. (AR 346–51, 380–85.) At the April 18, 2013, session, Plaintiff reported that her back felt "okay" and that she did not take her pain medication the prior evening. (AR 350, 384.) Plaintiff continued

3

physical therapy until June 2013. (AR 492–505.) On June 28, 2013, the physical therapist noted that after 12 visits, Plaintiff had "improved in bilateral scapular stability allowing her to improve with posture and perform regular [activities of daily living] with less difficulty." (AR 416, 507.) Plaintiff "denie[d] pain" and reported being able to lift her daughter, light objects, and to "perform normal [activities of daily living] with less difficulty." (AR 416, 507.)

### 3. Consultative Examiner Roger Wagner, M.D.

On July 14, 2013, internist Dr. Wagner reviewed Plaintiff's x-ray results and conducted an internal medicine evaluation. (AR 401–404.) Plaintiff complained of thoracolumbar back pain and scoliosis. (AR 401.) She reported that physical therapy has "helped significantly." (AR 401.)

Plaintiff reported she can walk four to six blocks and sit for about 60 minutes. (AR 401.) She cooks, cleans, drives, shops, and performs her own activities of daily living without assistance. (AR 401.) Plaintiff reported participating in physical therapy and using an exercise bike "almost daily." (AR 401.)

Dr. Wagner observed Plaintiff "easily" get up and out of the chair from the waiting room and walk at a "brisk" pace back to the exam room without assistance. (AR 402.) Plaintiff sat "comfortably" and was "very easily able to get on and off the exam table." (AR 402.) She was "very easily" able to bend over at the waist and take shoes and socks off and put them back on, "demonstrating good dexterity and good flexibility." (AR 402.) Dr. Wagner observed that Plaintiff was able to walk on her toes and heels and had a normal station and gait. (AR 403.) Plaintiff's Romberg and straight leg raising tests were negative. (AR 403.) She had normal "5/5" grip strength and "5/5" motor strength, in both the upper and lower extremities bilaterally. (AR 404.) Dr. Wagner diagnosed Plaintiff with back pain, noting that while Plaintiff complains of back pain and has x-rays that show "some scoliosis," she has "good sitting tolerance and is flexible today." (AR 404.) He commented that "[i]t is difficult to see any significant scoliosis on today's exam." (AR 404.)

Dr. Wagner assessed Plaintiff's physical residual functional capacity ("RFC")[4] and opined that Plaintiff was limited to (1) standing or walking up to six hours; (2) lifting and carrying 25 pounds frequently and 50 pounds occasionally; and (3) stooping or crouching no more than frequently. (AR 404.) Dr. Wagner found no limitations on sitting, manipulative activities, or environmental activities. (AR 404)

### 4. State Agency Physicians

On July 30, 2013, Joan L. Bradus, M.D., a Disability Determinations Service medical consultant, assessed Plaintiff's RFC and found that, taking into account her "mild scoliosis," Plaintiff had no exertional or non-exertional limitations. (AR 96.) Dr. Bradus discounted Dr. Wagner's opinion, finding that it relied "heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." (AR 97.) Upon reconsideration on November 21, 2013, another Disability Determinations Service medical consultant, Norman J. Rubaum, M.D., affirmed Dr. Bradus' RFC findings. (AR 106.)

### B. Plaintiff's Statement

On April 26, 2013, Plaintiff completed an "Exertion Questionnaire." (AR 222–24.) Plaintiff stated that she lives in a mobile home with family. (AR 222.) She described her disabling symptoms as "too much pain throughout the day" that is "unexpected" and "can effect [sic] a 5 hr/day wkday." (AR 222.) When asked what kinds of things she does on an average day and how those activities make her feel, Plaintiff responded that she has to "take everything slow and very well managed." (AR 222.) She stated that she has more pain with certain activities and that it "depends on the act." (AR 222.) She can walk "only so far before it becomes uncomfortable and painful." (AR 222.) Plaintiff reported that she climbs stairs, lifts things, and can carry things but has to take medication for the pain. (AR 223.) She shops for groceries,

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

cleans her home, drives a car, gardens, but does not work on cars.  (AR 223.)  Plaintiff reported that she has difficulty finishing housework and chores due to "pain," "uncomfortableness" and "time management."  (AR 224.)  Plaintiff sleeps for 10 hours a day and takes no naps.  (AR 224.) She reported taking ibuprofen and using a brace to support her back.  (AR 224.)

**C.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on August 1, 2013, and again on reconsideration on November 21, 2013.    (AR 114–19, 121–24.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 126–32.)  At the hearing on March 18, 2015, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 55–78.)

**1.    Plaintiff's Testimony**

Plaintiff testified that she cannot work because she is "usually in too much pain and the jobs just bring more pain" and she doesn't want her six-year-old daughter to see her "in that much pain."  (AR 63.)  She stated her pain is in her neck when she stands or sits for long periods of time.  (AR 63.)  The pain in her neck is "just uncomfortable" and feels like she's "choking all the time."  (AR 64, 73–74.)  She also has pain in her low back whenever she does "anything for a long period of time."  (AR 63.)  Plaintiff testified that she is in pain "all the time" but it is "more intense and severe sometimes."  (AR 64.)  She stated that activities such as "talking, walking, standing, sitting" for a "long time" make the pain worse.  (AR 64–65.) Plaintiff testified that when she "really concentrate[s]" it gets her "mind off of the pain."  (AR 65.)  She stated that the pain is also in her ankles, hips, and joints.  (AR 73.)

Plaintiff stated she takes Tramadol, a muscle relaxer, and Meloxicam, for pain.  (AR 65.)  She testified that the medication "makes a difference because it's medication" but her pain remains at a "ten" on a scale of one to ten.  (AR 67.)  Plaintiff attended physical therapy, but testified that she did not get any positive results from her sessions.  (AR 74–75.)  She has not been recommended for surgery or steroid injections.  (AR 77.)

Plaintiff testified she has a valid driver's license and drives her car every day to take her daughter to her school bus stop.  (AR 58.)  She also drives to go shopping at the grocery store

6

and Wal-Mart, and sometimes drives her daughter to the library.  (AR 58.)  Plaintiff testified that the most that she can lift and carry is the weight of her purse; however she later stated she could lift her daughter, who weighs more than 40 pounds.  (AR 68, 71.)  According to Plaintiff, she cannot walk far without getting out of breath, as she is "out of breath with everything, even talking or thinking, sitting, [and] concentrating."  (AR 69.)  She testified that she cannot stand long, her lower back, ankles, hips, and knees ache while sitting, and she lies down "every day."  (AR 69, 76.)  She can walk a block but "choose[s] not to."  (AR 76.)  She can "sometimes" sit through a two-hour movie but often has to stand up "less than halfway" through it.  (AR 77–78.)

Plaintiff lives in a mobile home with her partner, their daughter, and four dogs.  (AR 56.)  She completed four years of college but did not obtain a degree.  (AR 58.)  Plaintiff testified that she last worked in December 2011, when she "voluntarily quit" her job to move in with her daughter's father.  (AR 59.)  Since 2013, she has applied for full time retail sales and cashier jobs at Target, Wal-Mart, McDonald's, and other local businesses.  (AR 62–63, 72.)  Plaintiff testified that if she had been offered one of those jobs she would have accepted it, "[d]epending on what they wanted me to do," because she "would probably be making more money" than she was receiving in welfare.  (AR 63.)  According to Plaintiff, she'd "force" herself to work, but she believes she is not being hired because the employers "already know" she is disabled or in pain.  (AR 72.)

### 2.	Vocational Expert's Testimony

A Vocational Expert ("VE") testified at the hearing that Plaintiff had the following past work as a sandwich maker, Dictionary of Operational Titles (DOT) code 317.664-010, which was unskilled with a specific vocational preparation (SVP)[5] of 2, and light work as she performed it; and as a receptionist, DOT 237.367-034, semi-skilled, SVP 4, and light as performed.  (AR 81–83.)  The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history.  (AR 84.)  The VE was also to assume this person is limited to

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation).  *Id*.

lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, and can frequently stoop and crouch. (AR 84.) The VE testified that such a person could perform Plaintiff's past work. (AR 84.) The VE further testified that such a person could perform other jobs in the economy at the medium level, such as a kitchen helper, DOT 318.687-010, unskilled, SVP 2; an industrial cleaner, DOT 381.687-010, unskilled, SVP 2; and a cook's helper, DOT code 317.687-010, unskilled, SVP 2. (AR 84–85.)

The ALJ posed a second hypothetical regarding the first hypothetical person but with the additional restriction in that they can lift and carry up to 20 pounds occasionally and 10 pounds frequently. (AR 85.) The VE testified that such a person could perform Plaintiff's past work as performed (but not the sandwich worker per the DOT), and could also perform other jobs in the economy, such as an usher, DOT 344.677-014, light, unskilled, SVP 2; a ticket taker, DOT 344.677-010, light, unskilled, SVP 2; and a cashier, DOT code 344.677-010, light, unskilled, SVP 2. (AR 85.) The ALJ asked the VE to consider the same hypothetical but with the following additional restrictions: can lift and carry up to 10 pounds occasionally; can stand and walk about two hours; no constant repetitive rotation, flection, or extension of the neck; and must be allowed to take additional unscheduled breaks at will for 15 minutes. (AR 85–86.) The VE testified that there would be no work such person could perform. (AR 86.)

Plaintiff's attorney asked the VE to consider a person of Plaintiff's age, education, and past work history, and to assume this person was limited to lifting no more than 10 pounds; occasional postural activities; standing and walking no more than a total of four hours per day; and sitting more than four hours a day with the ability to change positions every 30 minutes. (AR 86–87.) The VE testified that such a person could perform sedentary jobs such as assembly, DOT 734.687-018, unskilled, SVP 2; and ampoule sealer, DOT 559.687.014, unskilled, SVP 2. (AR 87.) Plaintiff's counsel then asked the VE to consider that same hypothetical person as just presented but to include the additional limitation that the person needs to lie down at unpredictable intervals, on average of an extra 15 minutes per day. (AR 88.) The VE testified that no jobs were available for that person. (AR 88.) Plaintiff's counsel's final question of the VE was to consider a hypothetical person who was able to lift no more than

10 pounds, able to sit no more than four hours a day, and able to stand and walk no more than two hours a day. The VE testified that no jobs were available for that person. (AR 88.)

**D.** **The ALJ's Decision**

In a decision dated May 18, 2015, the ALJ found that Plaintiff was not disabled. (AR 39–46.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 41–46.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since January 29, 2013, the application date. (AR 41.) The ALJ found that Plaintiff had the severe impairments of (1) disc disease at C5–C6 and C6–C7; (2) osteoarthritis; and (3) chronic pain syndrome. (AR 41.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). (AR 41–42.) The ALJ determined that Plaintiff had the RFC

> to perform less than the full range of medium work as defined in 29 CFR [§] 416.967(c) except [Plaintiff] can lift and carry 50 pounds occasionally and 25 pounds frequently and frequently stoop and crouch.

(AR 42.)

Given her RFC, the ALJ determined that Plaintiff was not disabled because she was able to perform her past relevant work as a receptionist and a sandwich maker. (AR 44.) The ALJ also made the alternative finding that Plaintiff could perform a significant number of other jobs in the local and national economies, specifically kitchen helper, industrial cleaner, and cook's helper. (AR 45.) In reaching her conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible. (AR 43–44.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 2, 2016. (AR 28–31.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its

judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.     APPLICABLE LAW

Social security claimants have the initial burden of proving disability. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5. An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).

If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. § 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. § 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. § 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. § 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. § 416.920.

## V.   DISCUSSION

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding her subjective complaints. (Doc. 14 at 6–11.) The Commissioner responds that the ALJ properly relied on evidence in the record that undermined the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 15 at 6–15.)

**A.   Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id*. As the

Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray*, 554 F.3d at 1226–27; 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.     The ALJ Properly Found Plaintiff Less Than Fully Credible.**

Here, the ALJ found Plaintiff's credibility was undermined by Plaintiff's treatment history, work history, the functional abilities Plaintiff demonstrated in daily activities that were in excess of her allegations of disability, and the objective medical evidence. (AR 43–44.) The Court takes each finding in turn.

**1.     Conservative Treatment**

The ALJ's credibility assessment properly relied on evidence showing improvement in Plaintiff's symptoms with "conservative treatment." (AR 43.) Plaintiff attended 12 physical therapy sessions between April and June 2013, which Plaintiff reported "helped significantly." (AR 43, 346–51, 380–85, 401, 492–505.) As the ALJ noted, at the conclusion of the sessions in

June 2013, Plaintiff denied having pain and reported being able to lift her daughter, light objects, and being able to "perform normal activities of daily living] with less difficulty." (AR 43, 416, 507.) The ALJ further observed Plaintiff's physical therapist's note that, as a result of these physical therapy sessions, Plaintiff had "improved in bilateral scapular stability allowing her to improve with posture and perform regular [activities of daily living] with less difficulty." (AR 43, 416, 507.) In July 2013, internist and examiner Dr. Wagner found that Plaintiff demonstrated "good dexterity and good flexibility" and had "good sitting tolerance" at her exam. (AR 43, 402, 404.) In 2012, Plaintiff reported controlling her pain with home exercise and over-the-counter medications. (AR 306–07, 328–29.) She also reported using a brace to support her back. (AR 224.)

In addition to physical therapy, Plaintiff's treating physicians recommended mild stretching, ice, heat, and exercise to address the pain. (AR 305, 324, 327.) As the ALJ noted, Plaintiff did not receive any biofeedback treatment, acupuncture, use of a TENS unit, and did not visit a pain management clinic. (AR 43.) Plaintiff testified she has not been recommended for surgery or steroid injections. (AR 77.) Based on the above conservative treatment and Plaintiff's positive response thereto, the ALJ was entitled to discount Plaintiff's credibility. *See Tommasetti,* 533 F.3d at 1040 (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *Morgan v. Comm'r of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999) (ALJ's adverse credibility determination properly accounted for physician's report of improvement with use of medication); *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ may properly rely on the fact that only conservative treatment has been prescribed); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (ALJ may consider whether treatment produced fair response or control of pain that was satisfactory).

The record also shows that Plaintiff was prescribed Tramadol and Meloxicam for pain

(AR 65, 223, 410, 458), which "worked well" (AR 452).[6]  Plaintiff was also prescribed ibuprofen.  (AR 224, 330.)  Plaintiff contends that her receipt of prescription pain medication demonstrates that she did not undergo "conservative" treatment for her pain.  (Doc. 14 at 9–10.) Several courts in this circuit, however, have found that the fact that Plaintiff has been prescribed narcotic medication does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment *as a whole* was conservative, particularly when undertaken in addition to other, less invasive treatment methods.  *See Traynor v. Colvin*, No. 1:13–cv–1041–BAM, 2014 WL 4792593, at *9 (E.D. Cal. Sept. 24, 2014) (finding evidence that Plaintiff's symptoms were managed through "prescription medications and infrequent epidural and cortisone injections" was "conservative treatment" was sufficient for the ALJ to discount the plaintiff's testimony regarding the severity of impairment.); *Morris v. Colvin,* No. 13–6236, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin; *Jones v. Comm'r of Soc. Sec.*, No. 2:12–cv–01714–KJN, 2014 WL 228590, at *7–10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found that plaintiff's conservative treatment, which included physical therapy, anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage therapy, diminished plaintiff's credibility); *Higinio v. Colvin*, No. EDCV 12–1820 AJW, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014) (holding that despite the fact that the claimant had been prescribed narcotic pain medication at various times, the claimant's overall treatment—which also included use of a back brace and a heating pad—was conservative); *Johnson v. Colvin*, No. 1:12–CV–524–AWI–GSA, 2013 WL 2643305, at * 13 (E.D. Cal. June 12, 2013) ("Plaintiff's spinal pain was treated with medication and not injections or surgery" and this "[c]onservative course of treatment is a proper basis to reject Plaintiff's subjective complaints."); *Walter v. Astrue*, No. EDCV 09–1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical

---

[6] Impairments that can be controlled effectively with medication are not considered disabling.  *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006).

therapy, and an injection). Accordingly, the ALJ's adverse credibility determination based on Plaintiff's conservative treatment will not be disturbed.

## 2. Work History

The ALJ properly found that Plaintiff's credibility was weakened by her own testimony that she stopped working for reasons unrelated to any alleged impairment and continued to apply for jobs after her disability application date. (AR 44.) Plaintiff testified that she last worked in December 2011, when she "voluntarily quit" her job to move in with her daughter's father. (AR 59. *See also* AR 256.) Plaintiff testified further that she has continued to apply for full-time work since 2013, and that she would have accepted a job, if offered. (AR 62–63, 72.) Taken together, the Court finds this evidence constitutes a clear and convincing reason to discount Plaintiff's credibility, and is highly probative as to the veracity of her statements that she is unable to work due to her physical limitations. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ did not err in considering the claimant's work history and his admission that he left his job for reasons other than his alleged impairment); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (plaintiff's search for work during the alleged period of disability is relevant credibility evidence); *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain"); *Clouse v. Comm'r of Soc. Sec. Admin.*, No. 6:16–cv–00084–HZ, 2017 WL 701386, at *7 (D. Or. Feb. 20, 2017) ("[T]he ALJ reasonably discounted Plaintiff's credibility due to the incongruence between the fact that she continued to apply for jobs after ending her employment with Harry & David and her testimony that she would not have accepted any such jobs if they had been offered.").[7]

---

[7] Even if the evidence relevant to Plaintiff's work history was not substantial enough to be a clear and convincing reason to reject Plaintiff's subjective testimony, remand is not required, however, because the remainder of the ALJ's credibility findings were supported by ample evidence in the record, *infra*. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm. of Soc. Sec. Admin.*, 359 F. 3d 1190, 1197 (9th Cir. 2004)) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion' such is deemed harmless and does not warrant reversal."); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001) (that some reasons for discrediting claimant's testimony should be properly discounted does not render an ALJ's determination invalid so long as that determination is supported by other, substantial evidence). This Court may not "second-guess" the ALJ's credibility finding simply because the evidence may have been susceptible of other interpretations more favorable to Plaintiff. *See Tommasetti*, 533 F.3d at 1039.

### 3.     Activities of Daily Living

The ALJ appropriately considered Plaintiff's activities of daily living in determining that she was not entirely credible.  When a claimant spends a substantial part of the day "engaged in pursuits involving the performance of physical functions that are transferrable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan*, 169 F.3d at 600 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.") (internal quotation and citations omitted).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Id.* (citations omitted).

Plaintiff alleges that she cannot work because she is in pain "all the time" and activities such as "talking, walking, standing, sitting" make the pain worse.  (AR 64–65.)  She asserts she cannot walk far without getting out of breath, as she is "out of breath with everything, even talking or thinking, sitting, [and] concentrating."  (AR 69, 76.)  Plaintiff further claims that she cannot stand long, that her lower back, ankles, hips, and knees ache while sitting, and that she lies down "every day."  (AR 69, 76.)  The ALJ found, however, that "the evidence demonstrates that [Plaintiff] maintains a fairly active lifestyle consistent with, if not exceeding the [RFC] described herein."  (AR 44.)  As the ALJ noted, Plaintiff testified that she could sit through a two-hour movie, yet also claimed that her back pain was aggravated by sitting too long.  (AR 42, 77–78.)  The ALJ pointed out that in in July 2013, Plaintiff reported riding an exercise bike "almost daily."  (AR 401.)  The ALJ found that Plaintiff, based on her own testimony, was able to shop, garden, cook, and clean her home (which she shares with her partner, six-year old daughter, and four dogs) without assistance.  (AR 44, 58, 223, 401.)  Plaintiff also testified at the hearing that she drives her daughter to and from the school bus stop every day and to the library occasionally.  (AR 58.)

This Court's recent order in *Martin v. Colvin*, 2017 WL 615196, at *11 (E.D. Cal. Feb. 14, 2017) is instructive. In that case, the claimant was able to run errands using public transportation, read, crochet, watch television, and perform such household chores as cooking, laundry, vacuuming, cleaning the bathtub and shower bench. *Id.* The Court found that such "activities tended to suggest that the claimant may have still been capable of performing the basic demands of unskilled work on a sustained basis." *Id.* Here, Plaintiff engaged in largely the same types of daily activities, in fact to a greater extent, as the claimant in *Martin*. As such, the Court similarly finds that such activities tend to suggest that Plaintiff may still be able to perform, on a sustained basis, the basic demands of her past work of sales director (manager) and restaurant manager as generally performed. *See Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involved many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

To be sure, the record also contains some contrary evidence, such as Plaintiff's statements regarding her chronic pain, including in her joints and a "choking" sensation in her neck, and her inability to walk, sit, or stand for long periods. (AR 63–65, 69, 73–74, 222.) However, it is the function of the ALJ to resolve any ambiguities, and the Court finds the ALJ's assessment of Plaintiff's daily activities to be reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

### 4.  Objective Medical Evidence

Finally, the ALJ noted that "the objective medical evidence does not support the alleged severity of symptoms." (AR 44.)  Though the Commissioner asserts the ALJ properly discredited Plaintiff on this basis, the Court is not convinced that the ALJ was sufficiently specific in the articulation of this reason to permissibly discredit Plaintiff's testimony.  For example, the ALJ failed to specify what parts of the objective medical evidence undermined her subjective pain testimony; it is merely a conclusory statement that the objective medical evidence, summarized earlier within the decision, does not support that testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).  Under *Brown-Hunter*, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility.  806 F.3d at 494.  Instead, the ALJ must link the medical evidence at issue to the Plaintiff's testimony. *Id*.  Here, the ALJ did not do so.  Moreover, to the extent that the ALJ predicated her credibility determination in part on "the absence of clinical signs and laboratory findings in the case record," this finding is not supported by the record: as the ALJ herself acknowledges elsewhere in her decision, there are at least some objective clinical testing results in the record showing lower thoracic levoscoliosis of 11 degrees and disc disease at the C5–C6 and C6–C7 levels. (AR 41–42, 312–17, 336, 386, 438.)

//

However, these errors are harmless because the ALJ articulated other, permissible reasons for discounting Plaintiff's credibility, specifically, as set forth above, Plaintiff's conservative treatment history, Plaintiff's work history, and evidence in the record that conflicted with Plaintiff's allegation of total disability. *See Carmickle*, 533 F.3d 1155, 1162 (citing *Batson*, 359 F. 3d at 1197); *Tonapetyan*, 242 F. 3d at 1148. Thus, the ALJ did not err in finding Plaintiff's subjective symptom testimony and statements "not entirely credible." Remand is therefore not warranted on this basis.

## VI.     CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:     **February 6, 2018**                          /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE

19